Case number 24-5056, John S. Morter Appellant v. Pete Hegseth, Secretary, Department of Defense. Ms. Floyd, the point of having this carry on for the appellant. Mr. DiGennaro for the appellate. Good morning, your honors. Erica Hashimoto from the Georgetown Law Center's Appellate Litigation Clinic. With the court's permission, third year law student Ashley Floyd in our clinic will be the argument on behalf of amicus in support of Mr. Morter. Thank you very much. Thank you. Ms. Floyd. May it please the court. When DIA learned that Mr. Morter, a man who has dedicated over three decades to serving his country, had been diagnosed with an anxiety disorder, it chose not to accommodate this disability as encouraged by DOD policy, but to reassign him to an entirely different position hundreds of miles away from his family and his home. First, the district court erred when it held that Mr. Morter failed to exhaust his reasonable accommodation claim. Second, the district court erred when it held that no reasonable jury could find the secretary's proper justification as pretext for intentional discrimination. This court should reverse both holdings. Mr. Morter exhausted his reasonable accommodation claim because DIA had sufficient notice that he was raising that claim. Not only did he raise the claim in his EEO complaints, but both the AJ and EEOC ruled on the merits of that claim. Here, the procedural posture of the administrative proceedings helps establish this point. First, the AJ ruled on the merits of Mr. Morter's reasonable accommodation claim. It decided that although Mr. Morter was entitled to a reasonable accommodation, he was not necessarily entitled to one of his choosing. The agency implemented this order. On appeal, the EEOC reversed and vacated the judgment in part for two reasons. First, because in addition to raising a reasonable accommodation claim, the EEOC recognized that Mr. Morter's complaint had raised a disparate treatment claim, and the agency needed to conduct factual investigation on that matter. Second, it found that the record was inadequately developed with respect to why Mr. Morter was no longer permitted to work at SOCOM, given that he had been there for years without having successfully completed a polygraph examination. Justice Floyd, in the informal discrimination complaint, which I think was in June of 2014, and then again in the formal discrimination complaint, which I think was in July 2014, what's the best sentence that you can point to and say, ah, here it is. Here is Mr. Morter requesting an accommodation. To directly answer your question with one sentence, I would point the court to JA232. At the bottom of the page, it begins, in addition, CP, which is Mr. Morter, provided that he believes he is being discriminated against due to a mental disability that essentially invalidates measurements obtained through the repetitive. JA232, apologies, and JA233. OK, thank you. To continue, that essentially invalidates measurements obtained through the repetitive use of the polygraph examination. Although that's just one sentence, I think the following sentences are also helpful to establish this point, which is that Mr. Morter added that his inability to perform satisfactorily on the polygraph examination is a direct result of the symptoms associated with the mental condition known as anxiety disorder. In the next paragraph, Mr. Morter explains that he believes his reassignment was and the continued reliance on the polygraph examinations was in violation of DOD policy, which directs that no unfavorable administrative actions can be taken against an individual solely on the basis of an incompleted polygraph examination. That's in his complaint where I would direct the court to find. What about also on 232, in section, in part E.2, his requested remedies, one of which is suspend the pending reassignment until the polygraph issue is resolved. That's correct, Your Honor. That also points to the fact that Mr. Morter. In a straight up accommodation? Yes, that Mr. Morter. Whether against it or not is a different issue, but it's definitely an accommodation claim. That's correct, Judge Millet. That Mr. Morter was making clear to the agency that he was requesting to be accommodated per DOD policy for his inability to complete the polygraph examination procedures. And again, just to remind the court that the purpose of the Exhaustion Doctrine is to give the agency sufficient notice of the claim and the opportunity to investigate that claim and resolve the matter internally. Here, this was more than satisfied because Mr. Morter raised the claim in his complaints, but also because the AJ and the EEOC recognized that that claim was there. And in his formal complaint when he says on J229, the corrective action he's seeking is either return to work there or another position within the local commuting area. You read that also as a reasonable accommodation request? That's correct, Your Honor. So both the informal and formal are requesting relief. It's not damages or anything like that. It's an adjustment. Correct. At the time, Mr. Morter was requesting relief to be exempted, postponed, or a deferment of the polygraph examinations, which again is consistent with DOD policy, which recognizes that polygraph examinations are a supplement to and not a substitute for other investigative procedures. I think maybe the government says that there, Mr. Morter was not asking for an accommodation. Instead, he was requesting certain remedies in light of the discrimination that had occurred against him. What do you say to that distinction? To that distinction, I would just, if I'm understanding your question correctly, it's that the Rehabilitation Act requires the agency to make reasonable accommodations for individuals. And when Mr. Morter was asking to be relieved of the discrimination against him, part of that was to be given a reasonable accommodation by the agency. Moving to the disparate treatment. If you'd had, if you'd been the victim of discriminatory treatment, would the remedy ordinarily be you get a job somewhere else? I wouldn't think if it's discriminatory treatment, you would get your own job back. Whereas you said, yes, give me a job, another job in the area. Yes, Your Honor. And the record is clear that Mr. Morter could still do his job. He was very good at his job. He was simply unable to take polygraph exam, to successfully complete polygraph examinations. And moving to the disparate treatment. So I guess, I don't mean to interrupt you on this, but as we get into disparate treatment, I'm trying to understand the disability here. So it sounds like from what you just said, I think this is consistent with the record, that his, I think someone said it was a situational anxiety, that his anxiety, I mean, he was doing just fine until this whole polygraph process started. Is that accurate? Yes, that's accurate. He didn't claim to have any sort of disabling anxiety disorder before that. It was the polygraph processing that sort of set this all off. Is that right? The evidence seems to suggest that, yes, Your Honor. OK. So if his disability is sort of a situational anxiety that pertains to having to take polygraph examinations, and then all the sort of ensuing hubbub that comes around that, and failing, or not failing, that would have an inconclusive ones. I get this hasn't been argued, so it's fine. You can just say it wasn't argued. I'm just curious as to why this is a qualifying disability, because I don't know what major life activity it affects. Is taking a polygraph exam a major life activity? The major life activity, I believe, would be working, being able to work. He can work. He just can't take a polygraph exam. That's the whole point, is he can do his job just fine. He doesn't need any accommodations for doing his job. He just wants an accommodation for not taking a polygraph exam. Normally, the relevant disabilities that affect major life activities mean, I wheelchair, I need a door with a wider office for my work every day. I'm just curious, and again, it hasn't been raised, so you can just say it's not raised. The government didn't raise it, so they forfeited it. I was just curious as to how this was affecting a major life, why taking a polygraph is a major life activity. I think my answer would be the government has not raised this argument, and so I do not have an answer for you. And I see my time's expired. May I continue? Yes, yes, you wanted to talk about disparate treatment. Yes, the disparate treatment argument. A reasonable jury could infer from the totality of the evidence that Mr. Mortar was discriminated against on the basis of his disability. I think here, a reasonable jury could find particularly compelling the causal nexus. When did he first inform the agency of his anxiety disorder? The formal disclosure of the situational anxiety disorder occurred in November of 2013 when he met with Dr. Southo. There, he was directed to meet with an agency psychologist to determine why he was unable to complete the polygraph examinations. Right, but he didn't find a qualifying disability. He found that, in fact, ordinary polygraph processes, Dr. Southo at least didn't find diagnosing with anxiety, situational anxiety disorder. Dr. Southo did recognize Dr. McGee's previous anxiety diagnosis, but ultimately determined that the symptoms of Mr. Mortar's situational anxiety was, quote, probably easily attenuated by. Right, so the first time that Mr. Mortar informed the agency of a diagnosis, because Dr. Southo was not signing off on that, was when? Did he submit the McGee diagnosis in October 2013 to the agency? In November of 2013, during this meeting with Dr. Southo, he provided documentation. And again, Dr. Southo was an agency psychologist, so this information, previous diagnoses were sent on to other officials at DIA. Do we know when they were sent on, other officials at DIA? When they were sent on? The report was signed as December 4th, I believe. It was early December that Dr. Southo's report is dated as. And I do believe that because the agency had directed Mr. Mortar. But did that report that went to the agency say he has an anxiety disorder that's a qualifying disability relevant to taking polygraph exams? Did Dr. Southo's report say that? No, Dr. Southo's report did not say it. When's the first time the agency was given a diagnosis? I mean, the McGee thing's like a line. It's not much to it. A diagnosis that said he has a qualifying disability of anxiety disorder that affects his ability to take polygraph exams. This would be in August of 2014. And this is from Dr. Tuccio's report. Mr. Mortar was taken to a fifth polygraph examination in August and was unable to complete that. However, following this examination, he was emotionally distraught, so distraught that DIA required him to immediately go to a psychologist. They accompanied him to this appointment with Dr. Tuccio, where the doctor observed that Mr. Mortar was hyperventilating, shaking, tearful, at times on the verge of a panic attack. And it's just two weeks after DIA observes these severe physical manifestations of Mr. Mortar's now anxiety and PTSD that Mr. Norton reassigns Mr. Mortar to a new position. But they first proposed that reassignment in February 2014 before they'd been notified of a qualifying disability. That's when they made the initial recommendation to reassign. So when the initial decision to reassign is made before they have any knowledge of a qualifying disability, how could a reasonable jury conclude that the decision to reassign was based on his qualifying disability? Well, Your Honor, a reasonable jury could interpret the evidence differently and take the disclosure that occurred in November as DIA having knowledge of Mr. Mortar's disability. That would make the initial reassignment recommendation by the panel in February to have been made with notice of Mr. Mortar's disability. But that requires... So he hadn't submitted anything to the agency, and Dr. Southu said, not an issue. But we have to find in that notice that was enough to make them engage in contextual decision making, even back in February 2014, before they had an official diagnosis from him. It's a little hard to rely on Dr. Southu because he just did not make that diagnosis. That's correct, but Dr. McGee did make that diagnosis. And again, Mr. Mortar provided Dr. McGee's diagnosis and documentation to Dr. Southu in the agency. From this evidence, a reasonable jury could find that DIA knew Mr. Mortar had a situational anxiety disorder. A reasonable jury could also infer pretext from the fact that Mr. Norton did not actually think Mr. Mortar posed a threat to national security. It's clear from the record that at no time did Mr. Mortar have a security clearance revoked and... Well, it was revoked, it was just reinstated. I don't think so, Your Honor. I think Mr. Mortar retained his security clearance at all times. For example, in January of 2014, Karen McCord, the chief of the Central Adjudication Facility made a favorable SCI determination clearance. And it's our understanding that you cannot have the SCI designation without also having a top secret security clearance. The government has also agreed with us and the district court below that Mr. Mortar did not have his security clearance revoked. And this is at JA 346 where the government says, it is not in dispute that plaintiff did not have his security clearance revoked. Not revoked, but maybe not revoked, but they continue to press the issue. They continue to, they're concerned that he can't pass a polygraph. They make him take it again and again until he does. Your Honor. And when he can't, they say, there's some degree of risk here. We're not gonna go all the way to pulling a clearance, but we're not gonna impose this risk on a different agency. What's wrong with that? Your Honor, a reasonable jury could find that DIA was not actually concerned that Mr. Mortar was unable to pass the polygraph examinations. Again, although they required him to take more polygraph examinations, they didn't contemplate a reassignment until after the situational anxiety was disclosed. And they didn't actually reassign him until after the anxiety and PTSD diagnoses were disclosed. And I would also point out that there are other employees at DIA, including Mr. Mortar's direct supervisor. Again, I mentioned Karen McCord and a senior adjudication officer who reaffirmed Mr. Mortar's judgment, reliability, trustworthiness. And this was also in light of the fact that he was unable to pass the polygraph examinations. And it's important to recognize- So you had the agency he was working at, SOCOM, which is incredibly sensitive information, incredibly important and secretive military information. And that client said, we can't have someone here who's a vulnerability. We have a zero margin of error at SOCOM. We can't have him. And so DIA had no ability to force him on SOCOM. And he's not arguing that SOCOM was discriminating against him because of his disability or disputing that an agency of that level of sensitivity has to have sort of a zero tolerance rule. So he was going to have to be reassigned. That's just sort of undisputed on the record. He could not continue to work at SOCOM. So given that, and given that he doesn't dispute that he could still work at SOCOM when the client agency refused to have him on board, what is the discrimination in reassigning him? Is it the particular reassignment to DC? Well, Your Honor, DIA, who I agree was the ultimate decision maker here, did have another option, which was to follow its own policy and exempt or postpone Mr. Mortar from taking the polygraph examinations until he was emotionally, physically fine. But he couldn't go back to SOCOM in that time period. There just doesn't seem to be any, I didn't, and if I misunderstood, please let me know. I didn't understand there to be any argument that he had a right when there is this vulnerability, at least this potential risk, to continue his job at SOCOM. And so he was going to have to be reassigned somewhere. Is there any dispute about that? I think there is a dispute about that. Mr. Mortar did not need to be reassigned because- Outside, so he couldn't, his argument is I should have been allowed to continue working at SOCOM. In the SOCOM facilities in Florida. That's correct. But SOCOM had said, and DIA says, we can't force an employee, he's a civilian employee, we can't force that on a military unit that will not take somebody. And it's hard to think of anything more sensible than SOCOM. Not taking on someone who has any risk at all. The costs are way too high to the military and national security. So if he couldn't go back to that job, and if I misunderstood it, is he arguing that SOCOM discriminated against him because of his disability, or DIA? Our claim is that DIA discriminated against Mr. Mortar. And I think the problem- So then what was DIA supposed to do? They couldn't send him to SOCOM, so they had to give him another job. Is that correct? At the point in time where we are making this decision, that's correct. But I think it's important to back up a little bit and consider the fact that Mr. Mortar asked for a reasonable accommodation. A reasonable accommodation that would give no one in DOD reason to believe that Mr. Mortar posed a threat or risk or concern to national security. Wait, it's a reasonable accommodation to ask people to think a different way about him? No, Your Honor. The reasonable accommodation was to exempt Mr. Mortar from taking the polygraph examinations. Mr. Mortar was not- Okay, but then you can't do jobs for which polygraph examinations are required. They, again, DOD recognizes- It means definitely a reassignment to a new job. DOD recognizes that there are individuals who will not be able to take polygraph examinations because they are medically, psychologically, or emotionally unfit. And this is from policy duty instruction 2H. Mr. Mortar was one of those individuals. Had he not been subject to the consequences of an inability to complete the polygraph examination, there is no evidence in the record to suggest that Mr. Mortar posed a risk to national security. And again, this is particularly important to emphasize. They weren't gonna affirmatively find he was a risk, but he was definitely a vulnerability. I don't think Mr. Mortar, a reasonable jury, could find- Well, that's what they found, that he was a vulnerability. A reasonable jury couldn't find that someone who, I couldn't even keep track of how many polygraphs he did, a half dozen or more, and was unable to get a positive result on any of them. There were- And had been violating rules by doing research on how to game the polygraph test. There were a total of five polygraph examinations. None of these polygraph examinations measured Mr. Mortar's risk. They measured his anxiety. And the researching into polygraph examinations, as the record demonstrates, is a symptom of Mr. Mortar's anxiety. He was an overly self-conscious person. And this research, the disclosures, the memos were all out of concern that he was not being truthful to DIA, which he very much wanted to be. A reasonable jury could find, in light of all the evidence, that Mr. Mortar was discriminated against on the basis of- And what exactly is the reasonable accommodation he wants? Not to take a polygraph exam, but what about his job? I mean, not taking a polygraph exam doesn't help because he can't work at SOCOM. And so, what job accommodation did he want? Stop taking polygraphs and let me work where? If, to remain in his position- At SOCOM. At SOCOM, correct. If he did not have to take- Is it a reasonable accommodation to say, I want to continue working as someone who refuses for national security reasons to let me work there? Is that a reasonable accommodation? It is when the national security justification was pretextual. You think SOCOM's decision, which is not involved in all of this stuff, was pretextual? I had thought the whole case was about DIA and it's all these DIA officials. We don't have military generals here from SOCOM explaining their decision-making. This isn't a record about SOCOM's decision-making, it's about DIA's, right? Which is placing people in SOCOM and presumably other locations. And they said, SOCOM refuses to take him until he can pass a polygraph. And we can't, policy matter, we can't force SOCOM to take somebody who hasn't passed a polygraph. So it just feels to me like his accommodation had to be another job. Right? If there is a dispute about the reasonableness of an accommodation, that is a question on the merits of the reasonable accommodation claim. And as this court has recognized last year in Ali v. Reagan, the reasonableness of an accommodation is typically a question for a jury to resolve. Does he have to propose something that would be reasonable? That's available or not? No, he does not have to make the proposal that's reasonable. The obligation is to provide the accommodation. And again, I think this is a matter for factual dispute that a jury should be given the opportunity to resolve. Can I ask about, do you happen to have the district court opinion? It's JA-400. Yes. But that's page 10 of it, which is what my question's about. Okay. The second half of that page. Sorry, which page are you on, 10? It's page 10 of the opinion, and I think it's 400 of the JA. Yes. Here, an explicit charge of failure to accommodate is absent from order's EEO complaint, as is any factual allegation that could be construed as a request for accommodation. I know you disagree with that. We talked about that already a little bit. Further, the notice of partial acceptance, which details the charges that the DIA chose to investigate, shows that the agency understood Mortar's complaint to allege solely discrimination on the basis of mental disability, anxiety order arising from three incidents, and then it lists the three incidents. My question's about the next two sentences, and especially the last sentence coming up. There is no evidence in the record that Plaintiff ever objected to this narrow characterization of his claims, nor does he allege in his opposition that he did. I wondered if there's anything in his district court opposition that you could point to where he objects to this narrow characterization of his claims. Mr. Mortar does not object to the narrow characterization of these claims, and that's because his reasonable accommodation claim is itself incorporated into these characterizations by the notice of partial acceptance. So, the factual allegations that Mr. Mortar alleges was summarily the continued reliance on polygraph examinations, despite knowing that it conflicted with his disability and the reassignment that occurred from this. This is, and just to remind the court, that Mr. Mortar was proceeding pro se as he filed these, and his complaints are to be construed liberally. But... I'm not blaming you. Yes. He was not required to object to the characterization, because even that characterization includes his claims. If there are no further questions. Thank you very much. We used up all your time, but we'll give you a couple minutes every bit. Thank you. Good morning, your honors. Assistant U.S. Attorney, Stephen DeGennaro, on behalf of the government. Your honors, the heart of this case is that Mr. Mortar repeatedly failed the exact same portions of his counterscope intelligence polygraph examination, and admitted to conducting research into those polygraph examinations after initially denying conducting that research. This caused leadership within his duty station at Special Operations Command to lose trust in him, and they restricted his access to their classified systems and workstations. In response, DIA realigned Mr. Mortar to a position in DIA's headquarters, as DIA had done with other employees who did not have disabilities. When Mr. Mortar initiated EEO proceedings, he complained that his reassignment was discriminatory because of his disability. He did not include in his formal complaints that he had requested an accommodation from DIA, nor did he indicate that the agency had denied any such request. For those reasons, I will respectfully submit that the decision below should be affirmed. Now, I want to first start with the- Polygraph anxiety disorder, situational anxiety disorder, affects a major life activity. So you accept that he's qualified, otherwise qualified individual with a disability? Your Honor, we pressed several arguments below about the merits. We're solely up here on the basis of the failure to exhaust portion. I can always argue alternative grounds for affirmance, but did you argue below that it was not a qualifying disability because it didn't, or a relevant disability because it didn't affect a major life activity? Your Honor, we did argue that he was not an otherwise qualified individual below. We also did argue below that there was no request for an accommodation that was made here. So there are- But you didn't raise a major life activity question below. I do not believe that- Okay, so that was forfeited. Okay. I want to first start with two points with respect to the request for accommodation. Judge Walker, you had asked for my friend's best sentence within the formal complaint for the EEO counsel report that would support an idea that there was a request for an accommodation. We depart from amicus from Mr. Mortar and don't believe that that sentence is sufficient to put the agency on notice that it needs to conduct an investigation to a reasonable accommodation claim. There is no statement that Mr. Mortar had requested an accommodation of somebody from the DIA. There's no statement that would indicate that he had requested, or that he had described what that accommodation is, nor is there any factual statement that suggests- Why isn't suspend the pending reassignment until the polygraph issue is resolved? Is that not a request for an accommodation? Judge Millett, the statement as to remedies, that can also be read as requesting retroactive breed statement, which is, of course, a remedy that can be awarded- Until the polygraph issue is resolved. We need to work something out here. That's not an accommodation? That is not a request for accommodation as we read it. How do you read it? I read that- He's not saying suspend it forever, never make me do another one again. Again, Your Honor, I read that as a request for a remedy. Well, that's what a reasonable accommodation is. It's a remedy. You have to show that you qualify for your disability. And what I want is this accommodation. And then when it's denied, people argue that if they think it was improperly denied, then it's a form of discrimination known as failure to provide a reasonable accommodation. But your argument was, he didn't ask for a reasonable accommodation. And I'm pointing you to number two and telling me how a temporary suspension until an issue is resolved is anything other than a request for an accommodation. Your Honor, our position is that that is a remedy that is equally applicable to dis-retreat- Equally to both means it raises both. You have to show that that, which I can't, my eyes can't read it that way. You would have to show this is for a pro se, clearly requesting only relief for disparate treatment and not an accommodation while we work out how to deal with this disability. Your Honor, counsel for, amicus counsel for Mr. Warner had pointed to referenced the case Alley v. Regan. That individual, the employee in that case was also pro se. One was able to sufficiently put the good- That's not our test. We don't say, well, if one pro se somewhere was able to do something, we will read everything that every other pro se does in the strictest light possible. This is a temporary request here. This is not permanent. This is suspend something until a polygraph issue is resolved. That's not permanent relief, which is what you get for disparate treatment. That's work with me. Yes, I understand your point. That's the essence of a reasonable accommodation. I don't understand how you could read it as anything otherwise. Well, Your Honor, again, the request for an accommodation needs to be made. And the test from this- Okay, there we have it. And I'm not making this up. The administrative judge addressed, read it as just a reasonable accommodation claim, addressed the reasonable accommodation claim. It went up to the EEOC and they didn't say there's no reasonable accommodation claim here. They said, yeah, there is. But you know what? There's also a disparate treatment claim. So go back and also address disparate treatment. Now, if you take that sentence, you take what the administrative judge did, what the EEOC did and said, and sent them back to do. Tell me how you put all that together to say nobody was on notice that he was asking for a reasonable accommodation. Well, again, Your Honor, I think the fact that the details in the formal complaint, aside from the remedy language that you point to, in the EEOC counsel report, focus solely on the fact that Mr. Mortar is saying that he's being subjected to differential treatment because of his disability. With respect to the administrative judge. I'm sorry, I don't understand. I don't understand that again. What are you saying? That when you look at the EEOC counsel report that Mr. Mortar has asked. Yes, that's what I'm reading from. Yes, but what is absent from that EEOC counsel report are any indications that witnesses were asked, what do you know about the request that Mr. Mortar has made? Who responded to that request for an accommodation? Why was it denied? Those are factual details that would be present. Who was supposed to ask those things? The EEOC counsel report would be investigating that claim had they believed that Mr. Mortar's formal complaint had put the agency on sufficient notice of the existence of that claim. And again, while there's not. Maybe that's a failure on his part, but that doesn't mean it's a failure on Mr. Mortar's part. I mean, there's a problem with the EEOC counselor's work. That doesn't mean that he didn't do it because the administrative judge in the EEOC, again, the administrative judge thought it was just reasonable accommodation. I just, can you think of any case, even with a represented party, but certainly with a pro se, where it's raised there in words to me that sound entirely accommodative, and the administrative judge does a whole decision on reasonable accommodation, and it goes up to the EEOC and they say, okay, we get, they don't say, what are you talking about, reasonable accommodation? They say, yeah, but you forgot disparate treatment. We are on our first point as to the administrative judge. You have any case that has said that's insufficient for a pro se? I do not believe that there has been any decision that has weighed in one way or the other whether that's a crisis. Have you got any case where the agency, direct two levels of agency addressed a reasonable accommodation claim, and yet a court has held that a pro se did not raise a reasonable accommodation claim? And there is language right there in their formal, informal complaint that is accommodating, seeks accommodation. Your Honor, I am not aware of any decision that addresses one way or the other. So we'd be making new law for pro se's here. You can't find any case where we've read a pro se application with this level of stringency and closed our eyes to how the experts on the ground, the administrative judge and the EEOC viewed it. Your Honor, I don't believe a new test needs to be rendered in this case. I think that- It'll be the first time. I'm not aware of any case either where the language is right there. It's not remedial damages for disparate treatment. It's not completely put me back where I am. It put me in a different, either suspend this thing or in this formal complaint, give me a job somewhere in the local commuting area. Those are accommodations and nothing else. And it's fully addressed by the agency process at two levels, two times. Well, two things. First, Your Honor, while acknowledging the fact that the court has the discretion to consider arguments that were raised for the first time on the appeal, our position is that the arguments about the administrative judge and the EEOC decision are forfeited because Mr. Moore did not press that below. To the extent- Wait, wait, wait, wait. Did he argue below that he had exhausted his claim? He argued below that he had raised that claim in documents like the Notice of Appeal. Right, and we have pretty clear precedent that says a new argument in support of a claim that was preserved below is not a waiver issue. It's entirely permissible. Appellate lawyers do it all the time, come up with new and better arguments for claims raised below. He argued, it's in his complaint, and he argued to the district court, I made this claim and it was exhausted. He was a pro se, he didn't know that he was supposed to cite a couple pages in the record to point the district court to. But it was in his complaint, he made the argument. So he's not making a new argument here, he's pointing to additional pages in the record. Does the government want to live by that standard for its arguments on appeal? Your Honor, I would not want to get ahead of the Solicitor General on that point. No, the government, I'm sure the government does not. And so we aren't going to apply a different standard, you wouldn't ask us to apply a different standard of forfeiture to a pro se than we would to the United States government, would you? Again, so- Should we apply the same one, at least the same one? I think Your Honor is articulating a point about the fairness of allowing- Should we apply, no, I'm asking about the legal standards. Should we apply at least the same legal standard for preservation of issues, but advancing some new arguments in support of them on appeal to pro se's that we do to the United States government and other represented parties? Again, Your Honor, I would not want to get ahead of the Solicitor General. I'm what, you can't answer that question? Your Honor, I acknowledge that pro se litigants shouldn't be held to a more stringent standard than represented parties to include the United States government. So our case is that say you can make new arguments in support of claims raised below. He gets the benefit of that too. Yes, Your Honor, but that ties in with our second point about whether this had been properly teed up for investigation is the report of investigation, which we included at the beginning of our supplemental appendix, shows that the focus of that investigation that followed from this formal complaint was solely of one of differential treatment and not of a reasonable accommodation. I read the- Is that a document he created? I'm sorry, Your Honor? Is that a document he created? No, Your Honor, it's the report of investigation that the agency had created when it followed, took the allegations that he put them sufficiently unnoticed about in his formal complaint as many other federal sector employees who engage in the EEO process do without representative counsel, and they understood that claim to be one of disparate treatment and not one of reasonable accommodation. Is a failure to provide a reasonable accommodation as a matter of law a form of disparate treatment? Your Honor, I believe we cited cases in our brief that discussed from other courts of appeals that discussed that those are different types of disability discrimination, differential treatment, and- They're both forms of disability discrimination. They're both forms of differential treatment because the whole point is I'm otherwise qualified, and yet you're treating me differently than other people who are also qualified for the job but don't have a disability. Well, Your Honor, I was- You're not accommodating me with this reasonable accommodation. It's just like religious discrimination under Title VII, right? That it's still considered disparate treatment when you fail to make an accommodation that you reasonably can make. Well, Your Honor, I would gently push back on the idea that those are coextensive claims. In the case of a disparate treatment claim, there is discussion about whether the impermissible factor is being taken into account in the personnel action. In the context of a reasonable accommodation claim, the fact that the employee has a disability is being considered in the merits of those clients- Yeah, it's taken into account, and the question is whether we can accommodate it. They both take them into account. The question is whether we tried an accommodation or not. Well, the key factual dispute in a disparate treatment claim is whether that impermissible factor was considered in the employment action versus in the accommodation. You're litigating whether the reasonableness of the accommodation that was being made to account for that disability. It's not whether it was considered. It's whether, in disparate treatment, is whether it was sort of the causal reason for the adverse action that resulted. It's considered, and both of them, it can't not be. So it's just a question of causal connection for disparate treatment or failure to accommodate. I don't see what the point is, what the difference is. To say that they look at it this way, I mean, they were aware. You all gave them a reasonable accommodation from your perspective by reassigning. You didn't fire them. You reassigned them to DC. You said, this is the accommodation that we can do to address your vulnerability, right? That was your accommodation. You didn't fire them. You didn't say, we don't want you working here with your disability. You said, the best way to deal with your vulnerability, the vulnerability that results from your inability to take polygraphs is we gotta reassign you to someplace where that's not a vulnerability or can be mitigated by other means, correct? You offered him an accommodation. I don't know that I would characterize the evidence as saying it was providing him an accommodation. I think what the evidence shows in this case, and you touched on this with your question on the disparate treatment claim with the other side, is that it's not a dispute that SOCOM no longer wanted him in their facility and DIA, as his employer, had to determine how they were gonna respond to that. And the way they mitigated the risk associated with that persistent failure of the polygraph examination is that they said, we're gonna bring you back to headquarters. We're keeping you on board and we're gonna give you a job that lets you keep working with your disability but addresses the vulnerability concerns. Again, I think, Your Honor, that that is something that does not reflect that the agency was thinking of this as a response to an accommodation. No, because again, we don't believe that this was a request for an accommodation. Giving someone a different job that they can do, consistent with their disability, the government doesn't believe that's a type of accommodation. That note, Your Honor, we're saying that on this record, in this case, we don't believe that the evidence supports the... So on the record, in this case, giving someone a job, didn't fire them, that is consistent with their disability, allows them to continue to work consistent with their disability. In this case, it wasn't an accommodation. But if you did it for someone else, it might be an accommodation. Is that what you just said? You said on this record? No, so on this record, Your Honor, I believe that the evidence shows... Why is it not an accommodation on this record? Because again, I don't believe, Your Honor, that the evidence supports the inference that there was a request to be accommodated, made, of anybody within DIA, and... Maybe it was a really good agency that was proactive, didn't want to discriminate based on disability, wanted to keep this long-term employee on board with all his skills and experience if they could, but had to find a position that was consistent with the anxiety disorder that prevented him from taking polygraphs, or at least taking them in a way that could operate successfully to evaluate the risk that he posed. And so the agency said, I think you would be trumpeting this. The agency said, this is the best we can do. This is what we can do for you. Your Honor, you had asked about the Dr. Souffo report where he had indicated that we believe that the situational anxiety is probably something that could be attenuated by the procedures itself at the time that the recommendation is being made to reassign him to the headquarters. There isn't anything that suggests that the agency thought that the anxiety that he was experiencing, again, solely from being unable to pass only portions of the examination, because there is evidence in the record that Mr. Mortar was able to successfully complete three other lines of questioning in there. I don't believe that the inference here that just because the agency decided to mitigate his risk by bringing him back to the headquarters necessarily fits within the paradigm of the disruption. No, you did lots of accommodating. You gave him five different opportunities at exams. You spaced them out. You kept him working during all this time. And then when the problem persisted and he was able to provide more documentation of his disability, I would have thought y'all would say we did exactly what we're supposed to do here. Again, I think our position is that this case fits within PARCC versus our university and some of the cases that we're saying here. Your position isn't that the agency did exactly what the law expects it to do in this context. That is your position. That has to be your, you're saying we did everything right. That's what you're saying. Yes, Judge Walker, of course, our position is that there's no discrimination here. It's more of, I just wanted to make sure to push back on the notion that the way that the agency chose to mitigate the risk associated with the polygraph examination, I don't believe that that fits within accommodation as that word is used in the Rehabilitation Act. This is merely a decision by a national security apparatus to help mitigate a potential vulnerability. If he had affirmatively asked, can you assign me somewhere, this is this polygraph, thank you for giving me five different tries here and lots of time and space between them. It's not working. Can you reassign me somewhere where the risk issue is mitigated so that I can keep working? I've been here a long time. Obviously I want to retire and I've got a lot of skills and benefits. Can you reassign me somewhere? Would you understand that as a request for an accommodation? If Mr. Mortar had indeed asked for that. If he had asked for that, would you consider it a request for accommodation, yes? Yes, Your Honor. Can something be an accommodation if it's the agency's idea, even if the party didn't ask for it? Something may be an accommodation, a reasonable accommodation. All the time. Yes. All the time. Okay. Can I ask, assume that we think that Mr. Mortar did exhaust his accommodation claim, not saying we do or we don't. Could we then reach the merits of the accommodation claim? And say it's not meritorious? Yes, Your Honor. This court has the discretion to affirm on any basis that's found in the record. And Judge Millett suggested the qualified activity as one. We'd also press below that there was no indication that he had actually requested an accommodation to be excused from these polygraph examinations. And finally, the fact that there's evidence in the record to support that Mr. Mortar was required to pass these polygraph examinations. SOCOM no longer wanted him in their facility. The only reasonable accommodation that could be offered was this reassignment to DIA headquarters, where they can more effectively mitigate the risk associated with his polygraph examination. So, yes, Your Honor, there are additional grounds to support affirmance on the accommodation claim if you were to decide that it had been, in fact, exhausted. Was there any evidence from him, from you, that there wasn't anything in the area? I just don't know DIA's structure down in Florida. So the SOCOM's out, but there wasn't, did he ask for or identify, or was the agency aware of anything that, because I think his concern is he needed to stay in Florida. It's going to be too hard to move. Is that an open record question, or is it just there's sort of what DIA does down there is SOCOM and nothing else? I have no idea. So in addition to, so the place where Mr. Mortar worked is an Air Force base where there is SOCOM spaces and U.S. CENTCOM spaces. And one of the things that Mr. Norton did right before affirming the decisionary assignment was to check with CENTCOM, see if whether they would be willing to monitor Mr. Mortar to make sure that he didn't present a security vulnerability. That would not necessitate that he move out of the Tampa area. And when they checked, CENTCOM said that they didn't want to bear that risk. So. I'm sorry, who asked that? He did, or someone in the agency asked? Someone within DIA had requested. Yeah, so they checked for an accommodation. Okay. And so the answer, those are the only sort of two options down there, and both of them are obvious, I mean, obviously incredibly sensitive operations. So this isn't going to work for us. Is that what you're telling me? That's correct. Is that in the record? Where is it in the record? The CENTCOM, there's reference to it on page, I believe it's JA333. Yes, it's a JA333 where it's summarizing the steps that, so it starts, it's a two-page email starting on 332 and going on to page 333. Sorry, which document is that? I don't, I'm trying to figure out. This is an email that Mr. Mortar had received in response to a FOIA request. The final reassignment email, is that it? Yes. Okay, got it. Again, in there, that's where there's the discussion that they had received his notice to appeal. They conducted the fifth polygraph examination where, again, in that instance, he successfully completed the sabotage, espionage, and terrorism portions, and it got hung up on the classified info and the foreign contacts part for a fifth time. They conducted an interview to see if the interview was able to work through the issues that Mr. Mortar had with the polygraph. And then they also asked whether somebody in CENTCOM would be able to host him for a position there, and the answer was no. Okay, great. Any other questions? I see that I've gone well over my time, your Honours. That's my fault, I think. No, so for the reasons that we've stated here and for in our brief, we respectfully request that this Court affirm the judgment below. Okay, thank you. All right, Ms. Floyd, we will give you two minutes for rebuttal. I have two points on rebuttal, your Honour, one with regard to the reasonable accommodation claim and one with the disparate treatment claim. As to the reasonableness of the accommodation, this Court has held, and I'm quoting here from Olivier Reagan, that deciding the reasonableness of a given accommodation not uncommonly involves context-based decisions ill-suited for summary judgment. Here, it is in dispute whether Mr. Mortar's accommodation that was provided was a reasonable one. Again, the agency DOD instruction allows for the postponement and exemption of polygraph examination procedures, and that is what Mr. Mortar asked for. Well, so, not uncommonly is not the same as never, and this was a summary judgment decision, so did he come forward at summary judgment with evidence that would create a disputed question, material fact about the existence of an available alternative position for him in Florida, at the same DIA location in Florida? He did not come forward with a different location, but... Or a different job, did I identify something that he could do consistent with their need to address the vulnerability that he posed? The accommodation, again, this is likely not the answer that you're looking for, but the accommodation was to be deferred or exempted from the polygraph examination procedures, which would allow him to... And keep working in these sensitive places. Exactly, and I do recognize that... He didn't have another one. He wasn't aware of some other job there that he could... That's correct. I'm forgetting, that was his formal, informal complaint, says, or assign me to somewhere else in the metro area. No, he does not ask for that, and my second point is that, as you mentioned, these are incredibly sensitive positions, and DIA knew this, and this was the case for the two years that Mr. Mortar remained in his position, despite still being unable to complete the polygraph examinations procedures. During that time, DOD followed his policy, which is that polygraph examinations are a supplement to, not a substitute for, other investigative procedures. It was not until the disclosure of his diagnosis that DIA decided reassignment was necessary. I have no further points. If you have any questions, your honors. Okay, Ms. Floyd and Ms. Hashimoto, you were appointed by this court to represent Mr. Mortar in this appeal, and the court is very grateful for your assistance. The case is submitted.
judges: Millett; Katsas; Walker